IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. ELLIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
AVERY A. ELLIS, APPELLANT.

Filed March 4, 2014.    No. A-13-735.

Appeal from the District Court for Platte County: ROBERT R. STEINKE, Judge. Affirmed.

Nathan J. Sohriakoff, Deputy Platte County Public Defender, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Avery A. Ellis appeals his conviction and sentence on a charge of possession of a stolen firearm. On appeal, he challenges the sufficiency of the evidence to support the guilty verdict and alleges that the sentence imposed by the district court was excessive. We find no merit to these assertions, and we affirm.

## II. BACKGROUND

Ellis was charged with possession of a stolen firearm. The charge arose out of an incident wherein a semiautomatic pistol was stolen from a police officer's unmarked car in Columbus, Nebraska.

Jesse Trevino, a community service technician with the Columbus Police Department, testified that on August 23, 2012, at approximately 4:15 a.m., he was asleep in an apartment in Columbus when he was woken by the sound of a gunshot. He testified that the apartment window was open and that he heard the sounds of a single person running in the gravel alley

outside of the window. He testified that he looked out the window and observed a human "silhouette" running westbound from the area.

Trevino testified that he put his shoes on and ran outside, which took him approximately 35 to 40 seconds. He got into his car and began driving westbound in the direction in which he had seen the person running. As he drove down the alley, he observed an individual running toward an Ace Hardware building approximately one block from where he had first observed the "silhouette." He observed the individual going around the south side of the Ace Hardware building.

Trevino testified that he drove around the Ace Hardware building and again observed an individual running in the Ace Hardware building parking lot. He testified that the area was well lit, that his car's headlights were on the individual, and that he was approximately 50 feet from the individual. He testified that he was able to observe the individual's face, body, and figure. He testified that the individual was a white male wearing dark clothing, that the individual's pant legs were frayed on the bottom, and that the individual had light-colored hair worn in long dreadlocks.

Trevino testified that the individual then ran into the yard of a residence and that he lost sight of the individual. Trevino then called the Columbus Police Department dispatch, reported the gunshot, gave a description of the suspect, and provided his location. Members of the police department arrived and began a search of the area. Trevino remained in the area, watching to see if he observed anything.

Trevino testified that approximately 30 minutes later, he observed an individual that he identified as the same individual he had earlier seen running in the area. He testified that the individual was walking and was no longer wearing a coat. He called the police department again and informed them of the individual's location, and police officers in the area stopped the individual. Trevino testified that he recognized the individual as the same individual he had earlier seen running because the individual had the same hair, the same pants, and the same face.

At trial, Trevino identified Ellis as the individual he had seen that night. Trevino testified that he had not seen anyone else on foot at the time, which was in the very early morning hours.

Trevino testified that he then returned to the apartment where he had been sleeping, and he looked in the vicinity where he had heard the gunshot, in the alley. He testified that he located a handgun "laying with the magazine out of it." He then called dispatch again and told them that he had located the handgun. When police officers took possession of the handgun, a piece of garment was "sticking out of the slide of the handgun." The piece of garment appeared to be a black piece of fabric or cloth.

An investigation was undertaken in an attempt to determine the source of the piece of garment. After Ellis had been apprehended, it was discovered that he resided in the garage of his brother's house, located approximately three blocks west of where the handgun was discovered and approximately one block west of the Ace Hardware building. A search warrant was obtained to search Ellis' residence.

Police officers executed the search warrant at Ellis' residence and seized a jacket located in the residence. A forensic scientist testified that she had conducted an analysis of the piece of garment that had been located in the handgun and the jacket seized from Ellis' residence. She concluded that the piece of garment located in the handgun contained multiple fibers that could

have originated from the jacket or from another garment that was similarly manufactured. She also described for the jury how she compared fibers, and she explained photographs of microscopic views of various fibers from the piece of garment that had been located in the handgun and the jacket seized from Ellis' residence. She described microscopic similarities in the fibers, including consistent varying shades of particular colors, consistent width of fibers, and consistent use of "delustrant," which is "a chemical [added] to fibers so they won't be too shiny."

The State also presented evidence that the recovered handgun had been stolen from a police officer's unmarked cruiser, which had been parked outside his residence approximately two blocks from where it was eventually located. The officer testified that he had not given anyone permission to take his handgun from his vehicle.

Ellis testified in his own behalf. He denied having possessed a stolen firearm. He also testified that there was "at least one more person in that neighborhood" who wore his hair in dreadlocks. Ellis identified photographs of two other individuals who wore their hair in dreadlocks.

The jury found Ellis guilty beyond a reasonable doubt of possession of a stolen firearm. The district court sentenced Ellis to a term of 12 to 30 months' imprisonment. This timely appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Ellis has assigned two errors. First, he asserts that the State adduced insufficient evidence to support the guilty verdict. Second, he asserts that the district court imposed an excessive sentence.

## IV. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Ellis first asserts that there was not sufficient evidence adduced by the State to support his conviction. He asserts that there was no direct evidence, no fingerprints, no gunshot residue tests, and no witness who ever saw him with a handgun in his possession. He also challenges the identification made by Trevino on the night, and he argues that the State's evidence concerning the piece of garment and fibers from his jacket were inconclusive. As such, he asserts that no rational trier of fact could have found him guilty of possessing the stolen firearm. We disagree and conclude that the State's circumstantial evidence was sufficient to support the jury's verdict.

Neb. Rev. Stat. § 28-1212.03 (Reissue 2008) provides that any person who possesses, receives, retains, or disposes of a stolen firearm knowing that it has been or believing that it has been stolen shall be guilty of a Class III felony.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Ely*, 287 Neb. 147, ___ N.W.2d ___ (2014); *State v. Warrack*, 21 Neb. App. 604, ___ N.W.2d ___ (2014). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact exists. *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012). But circumstantial evidence is not inherently less probative than direct evidence. *Id.* In finding a defendant guilty beyond a reasonable doubt, a fact finder may rely upon circumstantial evidence and the inferences that may be drawn therefrom. *Id.*

In the present case, the evidence adduced by the State, although circumstantial, when viewed in the light most favorable to the State, provided an adequate basis for the jury to find Ellis guilty. The evidence adduced by the State indicated that Trevino woke up in the early morning hours to the sound of a gunshot outside of his bedroom window, that he heard a single person running in the gravel alley outside, and that he observed a single person running in a westbound direction. He immediately got into a car and went in the same direction, where he again observed a single person running only one block away. He got within 50 feet of that person, in a well-lit area, and was able to observe the person. He described the person as being a white male with long, light-colored hair worn in dreadlocks and wearing dark clothing and pants that were frayed at the bottom. Approximately 30 minutes later, Trevino observed Ellis walking in the area. Ellis had long, light-colored hair worn in dreadlocks, was wearing dark clothing, and had pants that were frayed at the bottom. Trevino had not seen anybody else on the streets at that time of the morning.

After Ellis was detained, the stolen firearm was recovered. When recovered, the firearm had a piece of garment or dark fabric stuck in its slide. A search of Ellis' residence, which was only one block from where Trevino had observed the individual running from the scene near the Ace Hardware building, resulted in the seizure of a dark jacket. A comparison of the fabric from the handgun and the fabric of Ellis' jacket resulted in a conclusion that they were similar and that the piece of garment located in the handgun could have come from the jacket.

Ellis' counsel was able to cross-examine the witnesses and demonstrate to the jury potential doubts about the timing of Trevino's pursuit of the suspect from outside of his bedroom window and Trevino's ability to positively identify anyone on the night in question. Ellis' counsel was able to cross-examine the witnesses about the failure to secure fingerprints or gunshot residue tests. Ellis' counsel was able to cross-examine the witnesses about the lack of a definitive conclusion that the fabric located in the handgun was from Ellis' jacket. Ellis testified in his own behalf and was able to present evidence of other individuals who lived in the area and were white males wearing their hair in dreadlocks.

On the evidence adduced, the jury concluded that the State had presented sufficient evidence to convince it of Ellis' guilt. It is not our province to second-guess the jury, reweigh the credibility of the witnesses, or reach our own factual conclusions. The evidence adduced was such that, when viewed in the light most favorable to the State, it provided a basis for a rational trier of fact to find Ellis guilty beyond a reasonable doubt. This assigned error is without merit.

### 2. EXCESSIVE SENTENCE

Ellis next asserts that the sentence imposed by the district court was excessive. Ellis argues that he was only 19 years of age at the time of the offense, had no significant criminal record, and was gainfully employed. He asserts the sentence of 12 to 30 months' imprisonment constitutes an abuse of discretion. We disagree.

Possession of a stolen firearm is a Class III felony. § 28-1212.03. As such, it is punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 2008). The sentence imposed upon Ellis was, thus, within the statutory guidelines.

Sentences within statutory limits will be disturbed on appeal only if the sentences complained of were an abuse of judicial discretion. *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

In the present case, Ellis was convicted by a jury of possessing a stolen firearm. The firearm at issue was a police weapon, stolen from a police officer's unmarked vehicle. That firearm was discharged at night in a residential neighborhood.

The presentence investigation report in this case indicates that Ellis scored in the "very high risk" range in the categories of procriminal attitude, education and employment, and companions. He scored in the "high risk" range in categories considering his family and marital history and his leisure and recreation activities. The probation officer who interviewed Ellis and completed the presentence investigation report concluded that Ellis expressed "no motivation to change thoughts and behaviors" and that "[t]here was a constant denial of responsibility for criminal activity." The probation officer opined that Ellis was not an appropriate candidate for probation.

The potential range of penalties available to the district court in this case was a term of 1 to 20 years' imprisonment. Ellis' sentence of 12 to 30 months' imprisonment is at the low end of the possible sentencing range. Given the nature of the offense and the other considerations in the record, the sentence imposed was not an abuse of discretion. This assigned error is meritless.

## V. CONCLUSION

We find no merit to Ellis' assertions on appeal. There was sufficient circumstantial evidence to support the jury's verdict, and the sentence imposed was not an abuse of discretion. We affirm.

AFFIRMED.